**DON MEADOWS MOTORS, INC., Petitioner,**

v.

**STATE of Indiana, BOARD OF TAX COMMISSIONERS, Respondent.**

No. 71T05–8611–TA–00047.

Tax Court of Indiana.

Jan. 14, 1988.

Bruce J. Bondurant, South Bend, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The taxpayer appeals a final determination of the State Board of Tax Commissioners in which the State Board denied the taxpayer's claim for an adjustment for abnormal obsolescence in determining the true cash value of inventory.

The taxpayer bases its claim for abnormal obsolescence adjustment on 50 IAC 4.1–7–1(C), which provides in pertinent part:

> [Abnormal obsolescence] includes unforeseen changes in market values, exceptional technological obsolescence or destruction by catastrophe that has a direct effect upon the value of the personal property of the taxpayer at the tax situs in question on a going concern basis.

The regulations with respect to valuation of inventory, 50 IAC 4.1–3–1 to 4.1–3–10, also address abnormal obsolescence. 50 IAC 4.1–3–9 provides:

> A taxpayer may claim an adjustment for abnormal obsolescence as defined in Section 1 of Rule 7 [50 IAC 4.1–7–1] of this regulation on inventory....

> .    .    .    .    .    .

> (B) Eligibility—The adjustment requested for abnormal obsolescence, as herein defined, will be allowed providing a taxpayer can substantiate that he has incurred abnormal obsolescence which has not as of the assessment date been recorded on his regular books and records. The term 'abnormal obsolescence' will be strictly construed and be limited to a situation where unforeseen changes in values as a result of exceptional technological obsolescence or destruction by catastrophe occur, providing that such events have a direct effect on the value of the inventory of the taxpayer at the tax status in question on a going concern basis.

50 IAC 4.1–3–9 narrowly limits the utilization of abnormal obsolescence to situations involving "unforseen changes in values as a result of excceptional technological obsolescence" or "destruction by catastrophe." Unlike the more general regulation 50 IAC 4.1–7–1(C), 50 IAC 4.1–3–9 does not include "unforeseen changes in market value" as an adjustment relevant to the determination of true cash value of inventory. Nevertheless, the taxpayer contends that it should be allowed the adjustment for abnormal obsolescence solely because of "unforeseen changes in market value" of part of its inventory.

"Generally, the rules applicable to construction of a statute apply to construction of administrative regulations." *Empire Gas of Rochester, Inc. v. State* (1985), Ind. App., 486 N.E.2d 1036, 1044. Where specific and general provisions conflict and the conflict cannot be otherwise resolved, the specific provision will control over the general. *Higgins v. Hale* (1985), Ind., 476 N.E. 2d 95, 100. Hence the narrower definition of abnormal obsolescence found in 50 IAC 4.1–3–9 controls this determination.

The taxpayer argues that the absence of the "unforeseen changes in market value" factor in 50 IAC 4.1–3–9 is an oversight or typographical error. The basis for this argument is that other provisions in Regulation 16, such as 50 IAC 4.1–2–8 dealing with depreciable personal property, 50 IAC

4.1–6–8 dealing with leased personal property and 50 IAC 4.1–8–4 dealing with interstate carriers, include the factor.

"[W]here it is clear that words have been omitted which are necessary to make the [regulation] workable and to give a complete sense, such words may be read into the [regulation] to express the true ... intent." 26 I.L.E. *Statutes* § 121 (1960); *Town of Homecroft v. MacBeth* (1958), 238 Ind. 57, 148 N.E.2d 563; *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34, cert. den. (1962), 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526. However, such a reading by the Court of 50 IAC 4.1–3–9(B) is not necessary because other provisions of 50 IAC 4.1–3 allow for changes in market condition.

50 IAC 4.1–3–5 allows the taxpayer to elect to value inventory on the prior calendar year average. This provides relief from the burden of excess inventory on the assessment date. 50 IAC 4.1–3–6 provides for a method of valuing inventory at the lower of cost or market. There are requirements which must be met in using these methods which may cause a taxpayer not to elect to use them. However, both of these options do allow for changes in market condition and the record suggests that these options were available to the taxpayer.

The State Board did not deny the taxpayer's claim for abnormal obsolescence under 50 IAC 4.1–3. Instead, the State Board denied the claim pursuant to 50 IAC 4.1–7–1 because the claimed obsolescence was neither nonrecurring nor unforseeable. The State Board also determined that the market conditions cited by the taxpayer had no direct effect on the value of the inventory. While these findings would be relevant to the question of whether the taxpayer was entitled to an adjustment for abnormal obsolescence under 50 IAC 4.1–7–1, the Court cannot sustain the State Board's determination because it applied the wrong regulation. The State Board should have measured the evidence presented against the limitation of 50 IAC 4.1–3–9 and other provisions of Rule 3 (50 IAC 4.1–3). While it does not appear, on the evidence submitted, that the taxpayer is entitled to an adjustment for obsolescence under 50 IAC 4.1–3, this Court will not make a determination before the State Board has applied the appropriate regulation.

IC 6–1.1–31–5(a) provides that "[t]he rules and regulations promulgated by the State Board are the basis for determining true cash value." 50 IAC 4.1–1–3 provides true cash value is the value "determined in accordance with the regulations issued by the State Board." The true cash value of inventory is determined pursuant to 50 IAC 4.1–3, and these regulations must be applied.

Accordingly, this cause is remanded to the State Board for further proceedings consistent with this opinion.