**RCA CORPORATION, Petitioner,**

v.

**STATE BOARD OF TAX COMMIS-
SIONERS, OF the STATE OF INDIANA,
Respondent.**

No. 49T05–8711–TA–00055.

Tax Court of Indiana.

Sept. 7, 1988.

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

RCA Corp. appeals the final determination of the State Board of Tax Commissioners, which found that RCA was not entitled to contemporaneous exemptions under IC 6–1.1–10–29 (Supp.1986) and IC 6–1.1–10–30(b) (Supp.1986) for business personal property. RCA and the State Board have filed cross motions for summary judgment.

RCA was a manufacturer of electronic audio and video equipment. It produced color televisions at its Bloomington facility and cabinets, printed circuit boards, and molded plastic parts at its Indianapolis facility. RCA maintained warehouses at both locations.

On March 1, 1986, the finished goods inventory in both warehouses included property which had been shipped into Indiana and placed in original packages in the warehouse for purposes of transhipment to in-state or out-of-state locations ("imported products") and property which was produced in Indiana and placed in original packages in the warehouses for storage pending shipment ("domestic products"). RCA claimed exemptions under IC 6–1.1–10–30(a), IC 6–1.1–10–29, and IC 6–1.1–10–30(b) on its 1986 business tangible personal property returns.

RCA claimed exemption under IC 6–1.1–10–30(a) for 98% of the imported products stored at the Bloomington and Indianapolis warehouses on March 1, 1986. The State Board did not dispute the exemption.

RCA also claimed exemption under IC 6–1.1–10–30(b) for part of the domestic products stored at both warehouses. Using the specific identification method, RCA determined that 36.71% of the domestic products had been ordered and were ready for shipment in interstate commerce to specific known destinations to which the inventory items were subsequently shipped. The value of the inventory for both warehouses was $15,099,505.

RCA also claimed exemption under IC 6–1.1–10–29 for domestic products which were stored and remained in original packages for the purpose of shipment to out-of-state destinations. Using the allocation method, RCA determined that 98% of the domestic products were destined for out-of-state shipment. The exemption was computed as follows:

| 1) | the cost of the total domestic inventory was | $41,131,857 ×98% |
|---|---|---|
| | multiplied by 98%; | 40,309,220 |

2) the amount of the exemption under IC 6–1.1–10–30(b) was subtracted from the gross amount;       $(15,099,505)

      25,209,715

3) the remainder was multiplied by the 60% phase-in amount, as required by P.L. 41–1984, § 5, to arrive at the exemption claimed under IC 6–1.1–10–29.    ×60%

      $15,125,829

Total Exemption for Domestic Inventory 1986:

| | |
|---|---|
| 10–30(b) | $15,099,505 |
| 10–29 | 15,125,829 |
| | $30,225,334 |

The State Board disallowed the exemptions under both IC 6–1.1–10–29 and IC 6–1.1–10–30(b) on the basis that RCA was required to elect one statutory method of exemption. Since RCA could verify only 36.71% of the domestic inventory by the more stringent specific identification method under IC 6–1.1–10–30(b), the State Board calculated the exemption using the allocation method under IC 6–1.1–10–29 for the total domestic inventory. After deducting the 60% phase-in amount, the total exemption allowed for domestic inventory was $24,185,532. This appeal followed.

The issue presented is whether the State Board's denial of the exemption under IC 6–1.1–10–30(b) was contrary to law insofar as RCA was entitled to contemporaneous exemptions under IC 6–1.1–10–29 and IC 6–1.1–10–30(b).

Resolution of the issue involves three statutes, IC 6–1.1–10–29, IC 6–1.1–10–29.5 (Supp.1986), and IC 6–1.1–10–30(b). IC 6–1.1–10–29 provides an exemption for manufacturers and processors whose property is stored in Indiana warehouses pending shipment to out-of-state destinations:

Personal property owned by a manufacturer or processor is exempt from property taxation if the owner is able to show by adequate records that the property is stored and remains in its original package in an instate warehouse for the purpose of shipment, without further processing, to an out-of-state destination.

Prior to the 1984 amendments, the scope of exemption was very narrow under IC 6–1.1–10–29. To ease the impact of the 1984 amendments on the counties' tax base, the legislature enacted a phase-in provision:

(a) Notwithstanding any language contained in IC 6–1.1–10–29, any property that is exempt from the property tax by IC 6–1.1–10–29 after the amendment made by this act and that would not be exempt under IC 6–1.1–10–29 as that statute existed before the amendments made by this act, shall only be partially exempt. The percentage of the assessed valuation that shall be exempt depends upon the year in which the property is assessed and is determined under the following table:

| | |
|---|---|
| Property assessed in 1984 | 20% |
| Property assessed in 1985 | 40% |
| Property assessed in 1986 | 60% |
| Property assessed in 1987 | 80% |
| Property assessed in 1988 | 100% |

(b) This SECTION expires January 1, 1989. P.L. 41–1984, § 5.

IC 6–1.1–10–30(b) provides an exemption similar to IC 6–1.1–10–29, although the requirements are more stringent:

Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property has been placed in its original package in a public or private warehouse for the purpose of shipment to an out-of-state destination;

(2) the property remains in the original package and in the public or private warehouse; and

(3) the property had been ordered and is ready for shipment in interstate commerce to a specific known destination to which the property is subsequently shipped.

If a property tax exemption is claimed under this subsection for property which is not shipped to a specific known destination as required under subdivision (3), the taxpayer shall file an amended personal property tax return for the year for which the exemption for that property was claimed.

IC 6–1.1–10–30(b) is not subject to the phase-in provision.

IC 6–1.1–10–29.5(b) provides the method of establishing the value of inventory claimed to be exempt under sections 29, 30(a), and 30(c):

> For the purpose of substantiating the amount of his personal property which is exempt from property taxation under section 29, 30(a), or 30(c) of this chapter, a taxpayer shall maintain records that reflect the specific type and amount of personal property claimed to be exempt so that the taxpayer's taxable personal property may be distinguished from his exempt personal property. In lieu of specific identification, the taxpayer may elect to establish the value of his exempt personal property by utilizing an allocation method whereby the exempt personal property is determined by dividing:
> (1) the value of the taxpayer's property shipped from the instate warehouse to out-of-state destinations during the twelve (12) month period ending with the assessment date; by
> (2) the total value of all shipments of the taxpayer's property from the instate warehouse during the same period of time;
> and applying this ratio to the taxpayer's total inventory of personal property which has been placed in its original package in the instate warehouse and which is in the instate warehouse as of the assessment date. If the taxpayer uses the allocation method, he shall keep records which adequately establish the validity of the allocation.

In its motion for summary judgment, the State Board argues that its determination is not contrary to law because according to the language of IC 6–1.1–10–29.5, the taxpayer must elect to use either the allocation method of IC 6–1.1–10–29 or the specific identification method of IC 6–1.1–10–30(b). The State Board argues further that no statutory basis exists which supports RCA's calculation of the exemption, that RCA avoids the phase-in provision by its calculation, and that RCA's method of computation would allow a taxpayer to obtain an exemption greater than the value of total inventory in 1987.

In its motion for summary judgment, RCA contends that the State Board's determination is contrary to law because the exemption was computed according to the language of IC 6–1.1–10–29 and IC 6–1.1–10–30(b). RCA contends that overlap is common in tax exemption statutes and that nothing in the statutes prohibits it from taking contemporaneous exemptions.

The State Board argues that by using the phrase "[i]n lieu of specific identification, the taxpayer may elect," the legislature intended to require taxpayers to elect one method of calculating the domestic inventory exemption. The statute, read as a whole, does not support the State Board's argument.

The legislature began IC 6–1.1–10–29.-5(b) by describing the statutes to which it applies: "[f]or the purpose of substantiating the amount of his personal property which is exempt from property taxation under section 29, 30(a), or (30)(c). . . ." No mention of IC 6–1.1–10–30(b) is made. The statute goes on to require the taxpayer to keep records which, by "specific identification," support the exemption claimed under section 29, 30(a), or 30(c). The statute continues, stating that "[i]n lieu of specific identification," the taxpayer may use the allocation method to support an exemption claimed under section 29, 30(a), or 30(c). The "election" specified in IC 6–1.1–10–29.5 does not affect an exemption taken under IC 6–1.1–10–30(b).

The State Board also emphasizes that IC 6–1.1–10–29.5 requires the taxpayer to apply the allocation method to the "total inventory." The State Board argues that RCA failed to do so because it subtracted the exemption under IC 6–1.1–10–30(b) from total inventory. As the State Board stated in its findings:

> This language prohibits *any* deductions from inventory *before* the appropriate percentages are applied under IC 6–1.1–10–29. Therefore, a taxpayer cannot exempt inventory under IC 6–1.1–10–30(b) and then apply IC 6–1.1–10–29 to the remainder because the allocation factor is not being applied against the total inventory. (Emphasis in original).

RCA did not exempt inventory first under IC 6–1.1–10–30(b), then apply the allocation factor to the remainder, rather than to the total inventory. RCA applied the allocation factor to the total inventory.

The State Board's findings continued:

Similarly, a taxpayer cannot apply IC 6–1.1–10–29 to the total inventory and then claim specific or the remaining goods under IC 6–1.1–10–30(b) because, logically, the remaining goods are being held for shipment to in-state destinations.

RCA did not apply the exemption under IC 6–1.1–10–30(b) to the remaining goods being held for in-state shipment. It simply applied the allocation factor of 98% to the total inventory, which included goods that also qualified under IC 6–1.1–10–30(b), to arrive at a gross exemption. To this extent, it complied with the language of IC 6–1.1–10–29.5 cited by the State Board. It then subtracted the amount of the exemption taken under IC 6–1.1–10–30(b) from the gross exemption. The amount remaining was domestic inventory destined for out-of-state shipment for which RCA did not have adequate records to qualify for the specific identification exemption under IC 6–1.1–10–30(b). RCA has not done anything prohibited by IC 6–1.1–10–29 or IC 6–1.1–10–29.5. RCA's method of computing the exemptions comports with the statutory language of both IC 6–1.1–10–29 and IC 6–1.1–10–30(b).

The State Board also contends that RCA has avoided the phase-in provision mandated by P.L. 41–1984, § 5. The State Board has not shown how RCA has avoided the phase-in provision. RCA limited its exemption under IC 6–1.1–10–29 to 60% of the total exemption available. The exemption taken under IC 6–1.1–10–30(b) for 36.71% of the domestic inventory was not subject to the phase-in provision. RCA complied with the phase-in provision.

The State Board argues that if RCA's method of calculation is allowed, then a taxpayer using the same figures would be entitled to an exemption which exceeds the value of total inventory in 1987. A comparison of RCA's calculation and the State Board's calculation, using the same figures for 1987, proves the State Board's contentions meritless.

| | RCA | State Board |
|---|---|---|
| 1) The cost of total domestic inventory is multiplied by 36.71%, representing the amount that is exempt under the specific identification | $41,131,857 ×36.71 | $41,131,857 ×36.71 |
| method under IC 6–1.1–10–30(b). | $15,099,505 | $15,099,505 |
| 2) The cost of total domestic inventory is multiplied by 98%, the allocation factor, which represents domesic inventory exempt under both IC 6–1.1–10–29 & 10–30(b), to | $41,131,857 ×98% | $41,131,857 ×98% |
| arrive at the gross exemption. | $40,309,220 | $40,309,220 |
| 3) The amount of exemption taken under 10–30(b) is subtracted from the gross exemption amount. The State Board omits this | (15,099,505) | ( –0– ) |
| critical step. | $25,209,715 | $40,309,220 |

|  | RCA | State Board |
|---|---|---|
| 4) The remainder, representing the amount exempt under IC 6–1.1–10–29, is multiplied by the 80% phase-in factor for 1987. | ×80% | ×80% |
|  | $20,167,772 | $32,247,376 |
| 5) Total exemption for domestic inventory 1987: 10–30(b) 10–29 | $15,099,505 20,167,772 | $15,099,505 32,247,376 |
|  | $35,267,277 | $47,346,881 |

Nothing in IC 6–1.1–10–29, 29.5, 30(b) or Regulation 16 prohibits contemporaneous exemptions. Even Regulation 16 characterizes the exemption statutes as "four separate and distinct sections within the statutes." Overlap is common among tax exemption statutes. Taxpayers who qualify for one exemption may qualify for another as well. *See Community Christian Church, Inc. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 523 N.E.2d 462; *Lincoln Hills Dev. Corp. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 521 N.E.2d 1360; *Indiana Ass'n of Seventh–Day Adventists v. State Bd. of Tax Comm'rs* (1987), Ind. Tax, 512 N.E.2d 936; *State Bd. of Tax Comm'rs v. Wright* (1966), 139 Ind.App. 370, 215 N.E.2d 57. As long as RCA does not take two exemptions for the same inventory, nothing in the statutes prohibits it from calculating the exemption in this manner. Accordingly, the State Board's motion for summary judgment is denied and RCA's motion for summary judgment is granted. The State Board's determination is reversed and remanded for further action in accordance with this opinion.